UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JAMIE S. GILLENWATER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-241-CCS |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 19]. Now before the Court is the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 14 & 15] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 20 & 21]. Jamie S. Gillenwater ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **DENY** the Plaintiff's motion, and **GRANT** the Commissioner's motion.

**I.     BACKGROUND**

On February 14, 2012, the Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that began on November 30, 2011. [Tr. 62, 162-64]. After her application was denied initially

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

and upon reconsideration, the Plaintiff requested a hearing before an ALJ. [Tr. 83]. Following the hearing [Tr. 55-82], the ALJ issued a decision on October 2, 2014, finding the Plaintiff was "not disabled." [Tr. 37-49]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on May 16, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication. Having considered the medical evidence in the record, the testimony at the hearing, and all other evidence in the record, the Court finds that the medical history of the Plaintiff and the content of the ALJ's decision are not in dispute, and need not be repeated here.

## II.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different

2

conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

### III. ANALYSIS

On appeal, the Plaintiff maintains that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence.

"The determination of a claimant's [RFC] is a determination based upon the severity of his medical and mental impairments." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). The RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Therefore, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. Feb. 9, 2007).

The ALJ is responsible for making an RFC determination after reviewing all the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, No. 12-6136, 2013 WL 4767020, at *8 (6th Cir. Sept. 5, 2013). This includes a review of both medical and non-medical evidence. *Poe v.*

3

*Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. Aug. 18, 2009). A court will not disturb an ALJ's RFC determination so long as the finding is supported by substantial evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

The Plaintiff challenges the ALJ's RFC determination on the basis that the ALJ failed to properly weigh the medical opinions of treating rheumatologist, Kimberly A. Leaird, M.D. [Doc. 15 at 18-25]. The Plaintiff contends that Dr. Leaird's opinion is supported by her treatment notes and other substantial evidence in the record, including treatment records from treating neurologist George Wheatley, M.D., and third-party statement letters written by the Plaintiff's previous employer and co-workers. [*Id.* at 18-24]. Moreover, the Plaintiff maintains that the ALJ's assignment of "great weight" to the opinion of a non-examining state agency physician was error. [*Id.* at 24-25].

Since April 18, 2007, Dr. Leaird has been the Plaintiff's treating rheumatologist. [Tr. 303, 720]. The Plaintiff suffers from Sjogren's Syndrome,[2] fibromyalgia, chronic fatigue, depression, and osteoarthritis with associated symptoms of chronic pain, stiffness, fatigue, decreased cognitive function, increase joint synovitis, and excessive dryness of the eyes and mouth. [*Id.*]. The record includes two medical opinions from Dr. Leaird that opine on the Plaintiff's functional abilities to perform work-related activities. [Tr. 303-04, 720-23].

The first opinion, dated November 14, 2011, is an attending physician's statement that was completed in connection to the Plaintiff's request for long term disability benefits for a private

---

[2] Sjogren's Syndrome is an autoimmune disease that typically attacks parts of the body by mistake, including glands that make tears and saliva, and causes dryness of the mouth, eyes, and sometimes other areas of the body that require moisture. MedlinePlus, *Sjogren's Syndrome*, U.S. Nat'l Library of Medicine and the Nat'l Institutes of Health, https://medlineplus.gov/sjogrens syndrome.html (last updated Sept. 18, 2017)

4

insurer. [Tr. 303-04]. Therein, Dr. Leaird opined the following: the Plaintiff could sit, stand, and walk two hours intermittently; she could occasionally climb and reach above shoulder level and use her hands for fine finger movements and continuously perform hand/eye coordinated movements; and she could never twist, bend, stoop, operate heavy machinery, lift or carry any amount of weight, and push or pull with her hands. [Tr. 304]. As to the Plaintiff's mental impairments, Dr. Leaird noted that the Plaintiff was very fatigued, lacked concentration, and was unable to focus despite multiple medications. [*Id.*].

On June 3, 2012, Dr. Leaird rendered a second form opinion, entitled "Treating Physician Medical Opinion of Ability to do Work-Related Activities – Physical." [Tr. 720-23]. The opinion's functional limitations differed slightly but were nonetheless equally as restrictive as those expressed in her November 14, 2011 opinion. Specifically, she opined that the Plaintiff could sit for three hours total but only 50 minutes uninterrupted and she could stand for two hours and walk for one hour total but only 10 minutes uninterrupted. [Tr. 720]. The Plaintiff could lift and carry less than five pounds, occasionally bend, twist, and stoop, and never climb, balance, squat, kneel, crouch, or crawl. [Tr. 720-21]. In addition, the Plaintiff could frequently perform simple grasping with her hands, as well as finger, handle, and feel, and she could occasionally reach overhead and in all directions, push and pull with both hands, and use both feet and legs for repetitive movements. [Tr. 721]. The Plaintiff must also avoid concentrated exposure to noise, fluorescent light, sunlight, fumes, odors, and dust, and avoid moderate exposure to extreme cold and heat, wetness, humidity, hazards, moving machinery, and unprotected heights. [Tr. 722].

In the disability determination, the ALJ concluded that despite the Plaintiff's severe impairments of fibromyalgia like symptoms and a history of Sjogren's Syndrome, the Plaintiff retained the RFC to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), except as

5

follows: the Plaintiff can lift and carry (including upward pulling) 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk for three hours and sit for six hours in an eight-hour workday with normal breaks; she can push and/or pull, including hand or foot controls, on an unlimited basis within the limitations stated herein; she can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; she can frequently balance, kneel, and crouch and occasionally stoop and crawl; and she must avoid all exposure to hazards but has no manipulative, visual, or communicative limitations. [Tr. 43-44].

With specific regard to Dr. Leaird, the ALJ assigned "little weight" to her June 3, 2012 opinion. [Tr. 47]. The ALJ found the opinion inconsistent with the record, and it appeared to be based on the Plaintiff's subjective allegations which the ALJ found were not entirely credible. [*Id.*]. The ALJ also found Dr. Leaird's encouragement that the Plaintiff increase her aerobic activities contrary to the functional limitations Dr. Leaird opined. [*Id.*]. Finally, the ALJ found Dr. Leaird's own treatment notes did not evidence any limitations regarding the Plaintiff's ability to lift or carry. [*Id.*].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. § 404.1527(c)(1)-

6

(6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. § 404.1527(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with the ALJ. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Sullenger v. Comm'r of Soc. Sec.*, 255 Fed. App'x 988, 992 (6th Cir. 2007).

The Court finds the ALJ gave "good reason" for assigning little weight to Dr. Leaird's June 3, 2012 opinion. Concluding that Dr. Leaird's opinion was not consistent with the record, including the Plaintiff's subjective complaints, the ALJ observed that the Plaintiff was only seen every four to five months, primarily for medication refills, she declined a local injection for pain in her hand, and treatment notes showed little evidence of positive serology[3] diagnostic tests in connection with the Plaintiff's Sjogren's Syndrome. [Tr. 45, 758, 780, 802]. The ALJ further observed that the medical evidence from the Plaintiff's previous treating rheumatologist, James L.

---

[3] Serologic tests are blood tests that look for antibodies in the blood and can be used to diagnose autominnue disorders. Krista O'Connell, *What is Serology?*, healthline, http://www.healthline.com/health/serology (last visited Sept. 22, 2017). Because the Plaintiff's serology was negative, Dr. Leaird's diagnosis of Sjogren's Syndrome was based on clinical symptoms and a positive Rose-Bengal test. [Tr. 442]. "The Rose-Bengal staining test determines whether there is inflammation of the cornea." Stuart Kassan, M.D., *What you need to know about Sjogren's Syndrome*, The Lupus Foundation of America, https://resources.lupus.org/entry/what-you-need-to-know-about-sjogrens-syndrome (last visited Sept. 22, 2017)

7

Burns, M.D., demonstrated that the Plaintiff's disabling impairments were present at the same level of severity prior to her alleged onset date, suggesting that the Plaintiff's impairments do not currently prevent her from working. [Tr. 45, 609, 844-70].

As to the lack of support within Dr. Leaird's treatment notes, the ALJ found that while Dr. Leaird treated the Plaintiff for Sjogren's Syndrome, fibromyalgia, and poor sleep, the medical evidence simply did not substantiate the severity of the Plaintiff's claims or Dr. Leaird's limitations. The ALJ observed that Dr. Leaird questioned the Plaintiff's diagnosis of Sjogren's Syndrome throughout treatment because serologic testing consistently remained negative. [Tr. 46, 758, 780, 802]. Moreover, Dr. Leaird's diagnosis of fibromyalgia and examination findings did not comport with Social Security Ruling 12-2p which sets forth the requisite criteria for diagnosing fibromyalgia. [Tr. 45-46]. The ALJ explained that while Dr. Leaird documented tender trigger points, she did not always quantify or further define the trigger points, nor did she rule out any other possible diagnosis, as required by the ruling, thereby leading the ALJ to conclude that the Plaintiff had fibromyalgia like symptoms. [*Id.*]. The ALJ also observed that while the Plaintiff had scattered trigger points of tenderness, treatment notes often indicated no active synovitis and only mild inflammatory arthritis of the hand joints. [Tr. 46, 306, 759, 783, 785]. Moreover, Dr. Leaird regularly noted that the Plaintiff was doing well, her medication of Dexamethasone did well to control her symptoms, and the Plaintiff was encouraged to increase her aerobic activity. [Tr. 46-47, 306, 785].

The Plaintiff argues that the ALJ's reasons do not amount to "good reason," citing to treatment notes in which Dr. Leaird noted multiple classic trigger points and traces of synovitis at times in the Plaintiff's hands, dry eyes and dry mouth caused by Sjogren's Syndrome, and occasional flare-ups of sciatic pain and other tenderness. [Doc. 15 at 20-22]. But the ALJ's

8

decision need not be supported by all the evidence in the record, only substantial evidence. *See Blakley*, 581 F.3d at 406 (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way"). Here, the ALJ considered Dr. Leaird's treatment of the Plaintiff and examination findings, and cited to specific evidence that undermined the severity of the limitations opined and the Plaintiff's complaints. Indeed, Dr. Leaird often noted that the Plaintiff was doing well and her medication was largely successful in controlling her joint pain and prevented flare-ups. [Tr. 758, 776, 780, 785, 795, 802].

The Plaintiff also argues that the ALJ erred by completely ignoring Dr. Leaird's November 14, 2011 opinion. [Doc. 15 at 20]. The Court agrees with the Plaintiff that this earlier opinion was not addressed by the ALJ. However, the Court finds the error harmless. An ALJ's error is harmless if his ultimate decision was supported by substantial evidence and the error did not deprive the claimant of an important benefit or safeguard. *Wilson*, 378 F.3d at 546-47. Here, Dr. Leaird's opinion, which was rendered prior to the Plaintiff's alleged onset date, mirrors similarly restrictive limitations as those opined in Dr. Leaird's June 3, 2012 opinion that, if adopted, would render the Plaintiff capable of performing less than sedentary exertional work. Thus, because the ALJ properly weighed the June 3, 2012 opinion, and provided "good reason" for giving it little weight, remanding the case for the ALJ to weigh the almost identical November 14, 2011 opinion would serve no useful purpose. *See Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 463 (6th Cir. 2005) ("[W]e continue to believe that [w]hen remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game.") (internal quotations omitted).

The Court is also not persuaded by the Plaintiff's arguments that Dr. Leaird's opinions are supported by the treatment notes from treating neurologist George Wheatley, M.D., as well as

9

the third-party statements. Dr. Wheatley, who treated the Plaintiff between 2008 and 2014 primarily for headaches superimposed on Sjogren's Syndrome, documented that the Plaintiff's headaches were generally stable and she was doing well from a neurological standpoint during the relevant time period under review. [Tr. 458, 724, 746, 808-809].

As to the third-party statements in the form of letters written by the Plaintiff's previous employer and co-workers, the letters generally recall the deterioration of the Plaintiff's health and her inability to perform her administrative work duties as result of pain, migraine headaches, fatigue, and an inability to remember simple details or stay focused. [Tr. 182, 276-78]. The ALJ gave "some weight" to the letters, finding them consistent with the Plaintiff's hearing testimony. [Tr. 47]. The ALJ noted, however, that the third-party witnesses were not medically trained to make exacting statements or observations, their relationship to the Plaintiff did not make them disinterested third parties, and "[m]ostly importantly, great weight could not be given to these statements because they simply were not consistent with the opinions and observations by medical doctors in this case." [Tr. 47-48]. The Plaintiff argues that Social Security Ruling 06-3p,[4] which provides guidance for assessing opinions from non-medical sources, does not require third-party witnesses to have medical training in order for their opinions to be entitled to deference, nor does the record suggest that these particular witnesses had anything to gain from offering their opinions. [Doc. 15 at 23]. The Court finds that the ALJ's decision to give some weight to the third-party

---

[4] The ruling explains that opinions from non-medical sources must be consider just like any other piece of evidence in the case record, and the ALJ "generally should explain the weight given to opinions from these 'other sources.'" 2006 WL 2329939, at *6 (Aug. 9, 2006). Such opinions, however, "are not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014). Nonetheless, Social Security Ruling 06-3p recognizes that non-medial sources who know the claimant in a professional manner may offer personal knowledge and expertise to make judgments about the claimant's impairment, activities, and level of functioning. 2006 WL 2329939, at *3.

10

statements primarily on the basis that the statements were not supported by the medical evidence of record alone is sufficient reason for the assignment of some weight. "[L]ay testimony must be given 'perceptible weight' [only] where it is supported by medical evidence." *See Allison v. Comm'r of Soc. Sec.*, No. 96-3261, 1997 WL 103369, at *3 (6th Cir. 1997) ((citing *Lashley v. Sec. of Health & Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983)). The evidence of record, as discussed herein and in the ALJ's decision, provides substantial evidence for the ALJ's assignment of some weight to the third-party statements.

Finally, the Plaintiff contends that the ALJ also erred by giving "great weight" to the opinion of a non-examining state agency physician. [Doc. 15 at 25]. The state agency physician at the reconsideration level opined sedentary limitations that the ALJ in turn adopted as the Plaintiff's RFC. [Tr. 47, 732-35]. The ALJ found the opinion was consistent with the record. [Tr. 47]. The Plaintiff argues that the opinion was not based on a complete review of the record, and the ALJ only provided a conclusory statement regarding the reason for the weight assigned. [Doc. 15 at 24-25].

The Court observes that it is not at all uncommon for non-examining and non-treating state agency medical and psychological consultants to render opinions prior to the medical evidence in a case record being completed. "There will always be a gap between the time the agency experts review the record and give their opinion with respect to the Listing and the time the hearing decision is issued." *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009). However, "absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand." *Id.* "When an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence," our appellate court "require[s] some indication that the ALJ at least

11

considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (internal citations and quotation marks omitted).

In the present case, the ALJ's decision demonstrates that treatment records generated by Dr. Leaird after the state agency physician rendered her opinion were properly considered by the ALJ. [Tr. 46-47]. Moreover, the ALJ concluded that the medical evidence before and after the Plaintiff's alleged onset date revealed that the Plaintiff's "alleged disabling impairments were present at approximately the same level of severity." [Tr. 45]. The Court further finds that the ALJ's failure to provide a more thorough discussion of the weight assigned to the state agency physician's opinion "is not fatal because her opinion[] [is] consistent with other record evidence [and] the inconsistent treating source opinions were properly discredited." *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 633 (6th Cir. 2016) (holding that the plaintiff could not establish prejudice given the ALJ's discussion of the evidence and supported basis for rejecting a treating source opinion).

## IV. CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Summary Judgment [**Doc. 14**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 20**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge